## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re:                                                    BKY 17-42895-MER

In re Daniel Frank Mus,                                   Chapter 7

                    Debtor.

---

### MEMORANDUM DECISION AND ORDER

---

At Minneapolis, Minnesota, March 1, 2019.

On September 22, 2017, Daniel Frank Mus ("the debtor" or "Mus") filed a petition under chapter 7 of the Bankruptcy Code.[1] ECF No. 1. The debtor seeks to avoid certain judicial liens under section 522(f)(1), claiming that they impair the exemption he claimed on his homestead. ECF Nos. 28, 32. The debtor's ex-spouse, Christine Mudge ("Mudge"), objected to that part of the debtor's motion that related to her ownership interest in the same property. ECF No. 34. A hearing was held on June 21, 2018 on the motion. Bradley Kirscher appeared on behalf of the debtor. John Lamey appeared on behalf of Ms. Mudge. After post-hearing briefing, the matter is now ready for disposition.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K), and this Court has jurisdiction under 28 U.S.C. §§ 157(a) and 1334. The Court makes this memorandum decision based on all the files, records, and proceedings herein, and pursuant to Fed. R. Bankr. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c). For the reasons set forth below, the debtor's request to avoid certain judicial liens is granted in part and denied in part.

---

[1] All statutory references in this opinion to the Bankruptcy Code are to the specified provision within 11 U.S.C. §§ 101-1532.

## BACKGROUND

The underlying facts of this contested matter are largely undisputed. Mr. Mus and Christine Mudge (formerly Mus) were married in Sunnyvale, California, on November 19, 1966. Until the parties separated on August 4, 2013, they lived in their homestead, located at 16659 Eldorado Street NW, Andover, Minnesota. Ultimately, they were divorced by virtue of a Judgment and Decree of Divorce entered on March 13, 2015, in the Tenth Judicial District Court, County of Anoka, Minnesota. The events that ensued thereafter in various state court proceedings are best characterized by the presiding state court judge as "substantial and tortured."

Mr. Mus filed for relief under chapter 7 on September 22, 2017. He was granted a discharge on December 27, 2017. ECF No. 11. The case was ordered closed and the trustee discharged on January 11, 2018. It was a no asset case.

Subsequently, on January 30, 2018, Mr. Mus moved to reopen the case; an order was entered that same day granting that request. ECF Nos. 13, 14, respectively. He then moved to amend his Schedule C, claiming the Eldorado Street property as his homestead. No party in interest objected.

Mus is now asking that the following "judicial liens," each entered in the Tenth Judicial District Court, Anoka County, Minnesota, be avoided under § 522(f)(1)(A) as impairing his homestead exemption:

1. Judgment in favor of Americana Community Bank in the original amount of $84,032.70, docketed July 23, 2014, Case No. 02-CV-14-3718;

2. Judgment in favor of General Electric Capital Corporation in the original amount of $1,057,588.39, docketed March 28, 2012, in Case No. 02-CV-12-6908;

3. Judgment in favor of Michael M. Whalen in the original amount of $89,667.00, docketed March 7, 2012, in Case No. 02-CV-11-7425;

4.  Order to Vacate Prior Order, dated June 8, 2016, docketed June 14, 2016, in Case
    No. 02-FA-13-1602;

5.  Order for Contempt and Order for Judgment, dated March 9, 2017, docketed March
    10, 2017, in Case No. 02-FA-13-1602;

6.  Findings of Fact, Conclusions of Law and Order, dated and docketed February 5,
    2018, in Case No. 02-13-1602; and

7.  Amended Order for Protection After Motion to Modify, dated and docketed March
    5, 2018, in Case No. 02-FA-13-1735.

## DISCUSSION

As a general rule, one of the main objectives of the Bankruptcy Code is to give a debtor a
"fresh start." Toward that end, courts are given considerable latitude in construing exemption
statutes in favor of the debtor. See In re Johnson, 509 B.R. 213, 216 (BAP 8th Cir. 2014)
("exemption statutes must be construed liberally in favor of the debtor and in light of the purposes
of the exemption."). See also, Title Ins. Co. of Minn. v. Agora Leases, Inc., 320 N.W. 2d 884, 885
(Minn. 1982) ("Minn. Stat. §§ 510.01-.09 (1980) govern the exemption of homestead property from
liability for debts. We have consistently construed these provisions liberally in favor of the debtor
due to their constitutional roots and the strong social policy of securing the home against the
uncertainties and misfortunes of life." (citation and footnotes omitted)). As a general principle, liens
that are consensual security interests and mortgages survive bankruptcy; however, the debtor should
be protected, again, as part of the homestead exemption, from certain nonconsensual liens. To
accomplish that objective, Congress enacted 11 U.S.C. § 522(f).

Section 522(f) provides, in pertinent part:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the
debtor may avoid the fixing of a lien on an interest of the debtor in property to the
extent that such lien impairs an exemption to which the debtor would have been
entitled under subsection (b) of this section, if such lien is ---

3

> (A) A judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);

11 U.S.C. § 522(f)(1)(A).

> The concept of "lien avoidance" has been around since the enactment of the Bankruptcy Reform Act of 1978. Section 522(f) gives the debtor a tool to extinguish the judicial lien that a particular creditor may have in property that would otherwise be exempt but for the lien of the creditor's judgment. Under the original provisions of § 522(f), "judicial liens could be avoided 'to the extent that such lien impairs an exemption,' but this phrase was not defined. Because of the disarray in the cases, Congress tried again in 1994 by adding § 522(f)(2)(A), which provides a formula to determine whether a lien 'impairs an exemption.' The gist of the formula is to add all of the liens, including the targeted judicial lien, plus the amount of the exemption. If this total exceeds the debtor's interest in the property, the assumption is that the excess value of the liens is due to the judicial lien, and consequently the judicial lien 'impairs the exemption' to this extent.

Baxter Dunaway, "Attachment is a Key to Understanding Protecting Homesteads by

Avoiding Judicial Liens in Bankruptcy," 12 Journal of Bankruptcy Law and Practice 233, 235

(2003). (footnotes omitted).

The Bankruptcy Law Manual explains the concept of "lien avoidance" in a very

straightforward manner:

> One of the most significant powers of a debtor is the power to avoid a judicial lien on exempt property, whether real or personal, to the extent the lien impairs a debtor's exemption, a power which greatly enhances the debtor's fresh start. A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," and includes an attachment or execution. Consensual liens, such as mortgages and Article 9 security interests, and statutory liens, such as mechanics' liens or tax liens are not judicial liens and cannot be avoided under Code § 522(f). The sole exception to the power to avoid judicial liens which impair the debtor's exemption is that the debtor is precluded from avoiding a judicial lien securing a debt which is excepted from discharge because it is a domestic support obligation. To qualify for lien avoidance, three requirements must be met: the lien must have affixed to an interest in the debtor's property, the lien must impair an exemption to which the debtor would otherwise be entitled, and the lien must be a judicial lien, except for a lien securing a domestic support obligation.

Feeney, Williamson, and Stepan, Bankruptcy Law Manual § 5:39 (5th ed. 2018). (footnotes

omitted).

The three monetary judgments against the debtor which are docketed in Anoka County, Minnesota, fit easily into the legal definition of "judicial lien."[2] First, each of the judgments is for a sum certain against the debtor. Second, under Minnesota law, each judgment attached to the debtor's property upon its recordation in Anoka County, Minnesota. MINN. STAT. § 548.09(1). Third, none of the three judgments is a domestic support obligation as defined by section 101(14A) of the Bankruptcy Code. Applying the "formula" supplied by the 1994 amendment to § 522(f)(2)(A) to these three judgment liens results in the following computation:

$1,231,288.09 – Sum of the liens to be avoided [$84,032.70 + $1,057,588.39 + $89,667.00]

+       $671,315.92 – all other liens on the property [mortgage to JP Morgan Chase]

+       $23,675.00 – [amount of the exemption that debtor could claim if there were no liens]

Total   $1,926,279.01

Less    $587,800.00 – [value of debtor's interest in the property in the absence of any liens]

Equals $1,338,497.01 – [amount by which all liens exceed debtor's interest in the property].

Therefore, the three money judgments against Mr. Mus are properly avoidable. These judicial liens impair the debtor's homestead exemption.[3] The debtor's motion is granted to this extent.

The relief Mr. Mus seeks in avoiding the state court "judicial liens" is more problematic. All of the four orders originating in the state court arise out of either the parties' divorce court

---

[2] § 101(36) – "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(37) – "a 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation."

[3] There exists a misconception in allowing a debtor to avoid a judicial lien. Must the debtor have equity in the property to properly claim the homestead exemption, and in turn, avoid the lien? That is not the case. "The debtor does not need to have equity in the property, only an interest. If an exempt homestead is fully secured by a mortgage, the judicial lien can be avoided in its entirety, any appreciation or additional equity in the property is saved for the fresh start of the debtor. Since impairment is a mathematical test, the debtor can avoid any and all intervening judicial liens. On the other hand, if the debtor claims an exemption in property worth more than the total of consensual liens, the available exemptions and the judicial liens, the judicial liens my not be avoided. You 'do the math.'" Timothy D. Moratzka, "Do the Math! Avoidance of Judicial Liens Under § 522(f)," 21-JAN Am. Bankr. Inst. J. 12 (December/January 2003).

proceedings or the eviction proceeding. Mr. Mus' petition concerning the state court orders raises

several questions. For example, does the Rooker-Feldman doctrine[4] preclude the Court from ruling

on the debtor's motion to avoid the liens? Do any of these state court orders meet the definition of

"judicial lien?" Did the debtor have an interest in the property to which a lien from the state court

orders fixed? All of these questions will be answered in turn.

### ROOKER-FELDMAN DOCTRINE

Ms. Mudge argues that the Rooker-Feldman doctrine prohibits the debtor's ability to

"avoid" the four orders emanating from the state court divorce proceedings. The doctrine has been

understood "that with the exception of habeas corpus proceedings, the inferior federal courts lack

subject-matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused

by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments.'" Cawley v. Celeste (In re Athens/Alpha Gas

Corp.), 715 F.3d 230, 234 (8th Cir. 2013), citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544

U.S. 280, 284 (2005). The doctrine has always been interpreted as a "narrow proposition," one

applied so as to circumvent disgruntled state court litigants from collaterally attacking a state-court

judgment in a federal court.

Mudge's argument, however, is misplaced. The request from Mus to avoid the state court

orders is being brought under the provisions of section 522(f) of the Bankruptcy Code. It is not

couched as "an attack on the validity of the state court judgments." Specifically, the relief available

to a debtor under the lien avoidance provisions of section 522(f) is a "core" proceeding by virtue of

28 U.S.C. § 157(b)(2)(B) ("allowance or disallowance of claims against the estate or exemptions

from property of the estate . . .") and (K)("determinations of the validity, extent, or priority of

---

[4] Named after the two cases from which the doctrine is derived: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)
and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

liens[.]" As this is a "core" proceeding, the bankruptcy court is uniquely situated to entertain the form of relief being sought. Were it any other way would render useless the provisions of section 522(f). Witness the variety of cases that have upheld the propriety and authority of the bankruptcy court to avoid liens. See In re Gruntz, 202 F.3d 1074, 1078 (9th Cir. 2000); Kalb v. Feuerstein, 308 U.S. 433, 438-39 (1940); In re Humes, 496 B.R. 557, 566-67 (Bankr. E.D. Ark. 2013).[5]

Accordingly, this Court has the authority and ability to entertain the debtor's request. The Rooker-Feldman doctrine is inapplicable here.

## THE STATE COURT ORDERS

As noted previously, the parties, during their marriage, lived at 16659 Eldorado St. NW, Andover, MN 55304 ("the Property").  The parties were divorced on March 13, 2015, by a Judgment and Decree of Divorce entered in the Anoka County District Court, File No. 02-FA-13-1602. ECF No. 28, Exhibit A. Per the divorce decree, the parties owned the property as tenants in common. On March 1, 2016, the state court approved a modification of the divorce decree and "[Mus] [was] awarded sole and exclusive occupancy of the [the property]." Mus Declaration, ECF No. 28, "Order to Vacate Prior Order," Exhibits B, C.[6] Subsequently, Mudge moved to vacate that order because she did not receive proper notice of the hearing. District Court Judge Jonathon N. Jasper granted Mudge's motion and set aside the March 1, 2016 order and awarded the debtor "sole and exclusive right to access to the [the property . . .]" but he was "not awarded occupancy of the house, as occupancy of the house directly impedes the foreclosure proceedings. Additionally, due to

---

[5] See also In re Huie, 2007 Bankr. LEXIS 2614 (E. D. Texas 2007) ("This court is not determining the merits of the State Court judgment. Rather, the issue presented is whether the lien resulting from the State Court Judgment can be avoided pursuant to federal bankruptcy law. Therefore, the Rooker-Feldman Doctrine does not preclude the Court from avoiding any portion of the [] lien pursuant to Bankruptcy Code § 522(f)(1)(A)."); In re Kelly, 133 B.R. 811, 813 (Bankr. N.D. Tex. 1991) (applying Owen, 500 U.S. 305) ("'although a state may . . . control what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f) of the [Bankruptcy] Code.'").

[6] These two exhibits appear to be identical copies of the same order.

his separate living accommodations, [Daniel Mus] has no need to occupy the dwelling." ECF No.

28, "Order to Vacate Prior Order," Exhibit B, p. 7.

However, that was not the end of the litigation regarding the property. Mudge asked Judge

Jasper to hold Mus in contempt. The state court found Mus "in contempt of the Court Order for

his continued occupancy of the premises, [and] failure to pay spousal maintenance, . . ." Id., "Order

for Contempt and Order for Judgment," Exhibit D, p. 18. The order also decreed that "No one is

awarded occupancy of the [property]. [Mus] shall vacate the house within 10 days of this Order.

Neither party may allow or permit any other party to occupy the residence. The parties may have

access to the house. The parties may not store personal property at the home nor allow others to do

so." Id. at p. 20.

On February 5, 2018, Judge Jasper awarded "immediate possession to [Mudge][who] has the

right to evict anyone living in the home." ECF No. 28, "Findings of Fact, Conclusions of Law and

Order," dated February 5, 2018, Exhibit E, p. 3. In contravention of that Order, Mus continued to

reside in the property; Mudge then proceeded to seek an order of eviction. On March 5, 2018, the

state court "excluded [Mus] from [the property] and [he] may not go within 2 blocks of that

property." ECF No. 28, "Amended Order for Protection After Motion to Modify," dated and filed

March 5, 2018, Exhibit F, p. 1. Mus then filed his notice of change of address on March 22, 2018.

ECF No. 18.

Mudge then initiated an unlawful detainer action against four individuals, purportedly

"acquaintances" of Mus, who were living in the property. The state court judge,[7] relying heavily on

the prior four state court orders at issue in this proceeding, granted judgment on the pleadings in

favor of Mudge. See "Order Granting Judgment on the Pleadings in Favor of Plaintiff," Tenth

Judicial District, County of Anoka, Minnesota, Case No. 02-CV-18-1389, Exhibit 1, attached to

---

[7] The Honorable James A. Cunningham, Jr.

Mudge's Memorandum of Law. ECF No. 40. Of particular significance here is Conclusion of Law No. 2: "The lease executed by Mr. Mus and Defendant Houge is dated January 4, 2018. As the 'lessor,' Mr. Mus would have only been authorized to grant Defendant Houge the rights that Mr. Mus himself had to the property. As of January 4, 2018, by way of Judge Jonathan Jasper's order dated March 10, 2017, Mr. Mus did not have the right to occupancy or any type of ownership. He only retained the right to access the property. The lease transfers from Mr. Mus property rights which Mr. Mus had no legal authority to transfer." Id. at p. 4. The state court then granted judgment on the pleadings in favor of Mudge, and ordered the defendants evicted from the property.[8]

## ANALYSIS

Are the four state court orders arising from the parties' marital dissolution subject to avoidance under 11 U.S.C. § 522(f)(1)? The answer to this seemingly simple question hinges on whether or not the orders are "judicial liens" – liens "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The Bankruptcy Code defines a "lien" as "a charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). In turn, the term "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). Drilling down even further, the term "claim" is defined in the disjunctive as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,

---

[8] Of note in this proceeding, two of the named defendants had previously removed this unlawful detainer state court action initiated by Mudge against the four individuals living on the property into this bankruptcy case. ECF Nos. 19, 20. Both of these removed actions were remanded back to the state court by this Court. See Mudge v. Benjamin S. Houge, Eliana Strouth, Mary Roe, John Doe (determination of removed claim or cause), Case No. 18-4032, ECF No. 19, and Case No. 18-4033, ECF No. 15.

contingent, mature, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A)

& (B).

Here, the central issue of each state court order involved the right of occupancy of the

property. The state court, under Minnesota law, retained jurisdiction to modify such occupancy

rights.[9] Clearly, none of these state court orders imposes a payment obligation upon Mus, such that

the obligation would attach to the property.

In arguing otherwise, Mus asks this Court to focus on that part of the Code's definition of

"lien" dealing with "performance of an obligation." ECF No. 41, p. 10.  He attempts to bootstrap

his argument by stating that the state court orders "imposed upon the debtor a legal duty to vacate

his homestead and thereafter continued to impose upon the debtor a legal duty to forbear from

occupying his homestead" in support of his argument that the orders impose an avoidable "lien" on

his homestead. Id. The debtor's argument is misplaced. True, the Code does not define the term

"obligation," however, this Court must return to the statutory definition of "lien." In this definition,

"a charge against or interest in property" must be read to modify both "to secure payment of a

debt" and also "to secure performance of an obligation."

Further support for such a reading of the statute is found under Minnesota law. "Whether a

debtor 'possessed an interest to which [a] lien fixed, before it fixed,' is a question of state law."

Farrey [v. Sanderfoot], 500 U.S. [291,] 299 [(1991)]." In re O'Sullivan, 841 F.3d 786, 789 (8th Cir.

2016). See also, CRP Holdings, A-1, LLC v. O'Sullivan (In re O'Sullivan), 914 F.3d 1162, 1165 (8th

Cir. 2019) ("The BAP also concluded that the existence of a lien for purposes of § 522(f)(1) is

---

[9] See MINN. STAT. § 518.63, "The court, having due regard to all the circumstances and the custody of children
of the parties, may award to either party the right of occupancy of the homestead of the parties, exclusive or
otherwise, upon a final decree of dissolution or legal separation or proper modification of it, for a period of time
determined by the court."

determined by looking to state law in the context of the Bankruptcy Code's definitions of the terms 'judicial lien' and 'lien' under §§ 101(36) and (37).").

The State Legislature of Minnesota defined the term "lien" in MINN. STAT. chapter 513 "Definitions" (2018), as follows: "'Lien' means a change against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien." MINN. STAT. § 513.41(9).[10] Additionally, in MINN. STAT. chapter 548, the Minnesota State Legislature addressed judgments and judgment liens, establishing that judgment liens are enforceable if they comply with the requirements of § 548.09.[11] Id.

There is no language in any of the four state court orders here that points to or suggests that the property was subject to a lien as security for payment of debt. Since the date of the original judgment and decree of divorce, Mus and his ex-spouse have held the property as tenants in common. The four orders modified the terms of the original order to prohibit Mus from occupying the premises – no more, no less.[12]

Each ex-spouse had a plan in mind for the property at issue here. As noted earlier, Mr. Mus was attempting to retain the property in the hope of either selling the property or entering into some form of loan modification with JP Morgan Chase. In that regard, Mus even went so far as to initiate an adversary complaint against Mudge; her divorce attorney; JP Morgan Chase; and Rushmore Loan

---

[10] No party is arguing that the statutory lien provisions of MINN. STAT. chapter 514, dealing with statutory liens, apply here.

[11] There are other types of property upon which a "lien" may be avoided. Section 522(f)(1)(B)(i)-(iii) allows the debtor to avoid a nonpossessory, non-purchase money security interest in certain types of household goods or furnishings, professional tools of the trade and professionally prescribed health aids for the debtor. Here, the debtor is not claiming that this statute is at issue.

[12] It is worthy of note that Mudge was suggesting that the state court orders didn't qualify as "judicial liens" because they should be considered as "domestic support orders" per section 101(14A). This Court disagrees. There is nothing in any of the four state court orders that supports such contention. There is no language in any of them that could be construed as a debt owed to or recoverable by a spouse that is in the nature of alimony, maintenance, support, or property settlement agreement.

Management Service in an attempt to remove Mudge from the mortgage and force Chase, as the mortgage holder, and Rushmore, as the loan servicer, to enter into a loan modification with him. See Daniel Mus v. JP Morgan Chase Bank, N.A., assignee of Washington Mutual Bank, F.A.; Rushmore Loan Management Service, LLC; Christine L. Mudge; and Jenna C. Westby, Case No. 18-4009. This Court granted judgment on the pleadings in favor of all defendants. Id. at ECF No. 65. Mudge, on the other hand, had filed for relief under chapter 7 of the Bankruptcy Code on May 5, 2015.  See Case No. 15-41632, United States Bankruptcy Court, District of Minnesota.  In her filings, she indicated that she was "not presently making [the] house payment, and that is why [the property] is in foreclosure." ECF No. 1, p. 33. Further, in her Statement of Intention, she indicated that the property was to be surrendered to JP Morgan Chase. Id. at p. 45. It appears that Mudge wanted nothing to do with the property, was not interested in a loan modification, and simply wanted the bank to proceed to foreclosure.[13]

As recently stated by the Eighth Circuit Court of Appeals, "As we recognized in the prior appeal, our sister circuits have distinguished between 'existent but presently unenforceable liens and nonexistent liens.' Persuaded by our sister circuit's distinctions, we 'conclude[d] that where a judgment gives rise to an unenforceable lien, a debtor may move to avoid that lien under § 522(f). When a judgment fails to give rise to any judicial lien (including an unenforceable lien), however, § 522(f)(1) is superfluous and without application.'" CRP Holdings A-1, LLC v. O'Sullivan (In re O'Sullivan), 914 F.3d 1162, 1166-67 (8th Cir. 2019) (citing In re O'Sullivan, 841 F.3d 786, 789-90 (8th Cir. 2016) (citations omitted)).

---

[13] There is nothing in the record before this Court that reflects the status of any foreclosure proceedings against the property. No party disputes that the property is worth considerably less that the amount owed on both the first and second mortgages, so the debtor's efforts at retaining his "homestead" and avoiding any judicial liens on it appear to be an exercise in futility.

Here, then, where none of the four state court orders qualifies as a "lien," let alone a "judicial lien," none of those state court orders are subject to being "avoided" under 11 U.S.C. § 522(f)(1). Simply, where there is no lien, there can be no lien avoidance. Therefore, Mr. Mus's petition to avoid as it applies to these state court orders must be denied.[14]

## CONCLUSION

Based on the above, the debtor's motion to avoid certain judicial liens under § 522(f)(1)(A) is GRANTED IN PART AND DENIED IN PART.

ACCORDINGLY, IT IS ORDERED:

1.  The debtor's motion to avoid the following judicial liens, all of which were entered in the Tenth Judicial District Court, Anoka County, Minnesota, is GRANTED:

    A.  Judgment in favor of Americana Community Bank in the original amount of $84,032.70, docketed July 23, 2014, Case No. 02-CV-14-3718;

    B.  Judgment in favor of General Electric Capital Corporation in the original amount of $1,057,588.39, docketed March 28, 2012, in Case No. 02-CV-12-6908; and

    C.  Judgment in favor of Michael M. Whalen in the original amount of $89,667.00, docketed March 7, 2012, in Case No. 02-CV-11-7425.

2.  The debtor's motion to avoid the following orders, all of which were entered in the Tenth Judicial District Court, Anoka County, Minnesota, is DENIED:

---

[14] In her resistance to the motion, Mudge, argues, as an alternative theory, that since Mus did not lawfully "occupy" the property on the petition date, as required by MINN. STAT. § 510.01, he effectively abandoned his right to claim it as his homestead.  "Even though, it may not have been by choice, the state court orders forbidding the Debtor from occupying the property which have been in place for much longer than three months, effectively mean that the Debtor has abandoned the property [per MINN. STAT. § 510.07] and there is no involuntary commitment exception which applies here." ECF No. 40, p. 3. Given the Court's ruling on the motion, it is unnecessary to address this argument.

A.  Order to Vacate Prior Order, dated June 8, 2016, docketed June 14, 2016, in Case

No. 02-FA-13-1602;

B.  Order for Contempt and Order for Judgment, dated March 9, 2017, docketed

March 10, 2017, in Case No. 02-FA-13-1602;

C.  Findings of Fact, Conclusions of Law and Order, dated and docketed February 5,

2018, in Case No. 02-13-1602; and

D.  Amended Order for Protection After Motion to Modify, dated and docketed March

5, 2018, in Case No. 02-FA-13-1735.

Dated:    *March 1, 2019*

*/e/ Michael E. Ridgway*
_____
Michael E. Ridgway
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/01/2019*
Lori Vosejpka, Clerk, by MJS